# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Toua K.,

                Petitioner,

v.

 Kristi Noem, et al.,

                Respondents.

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-01520
(MJD/DLM)

Emily Curran, Housing Justice Center, Counsel for Petitioner.

David W. Fuller, David R. Hackworthy, Assistant United States Attorneys, Counsel for Respondents.

This matter is before the Court on Petitioner Toua K's Petition for Writ of Habeas Corpus. [Doc. 1.] Petitioner claims he is currently unlawfully detained. Petitioner notes that he has a final removal order and has been on an order of supervision since 2011, and he argues that ICE did not follow the proper protocol for executing his removal. Respondents challenge Petitioner's argument, instead maintaining that Petitioner's detention is proper because there exists a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

I.    **Facts**[1]

Petitioner Toua K. is a native of Laos and member of the Hmong ethnic minority. [Doc. 1 ¶ 23; Doc. 5 at 1]. Petitioner entered the United States in 1988 as a child refugee and gained lawful permanent resident status. [Doc. 1 ¶ 24; Doc. 5 at 1.] In 2004, Petitioner was convicted of Third-Degree Criminal Sexual Conduct in Michigan. [Doc. 1 ¶ 25; Doc. 5 at 1.] While incarcerated in 2008, an immigration judge ordered Petitioner removed. [Id.] Petitioner was released from prison in 2011 and detained into ICE custody for roughly 90 days.[2] [Doc. 1 ¶ 25; Doc. 1 at 2.] The Department of Homeland Security was unable to execute his removal order within the statutory timeframe and released Petitioner on an order of supervision in June 2011. [Id.]

Petitioner's order of supervision required annual check-ins with ICE, which he complied with for over a decade. [Doc. 1 ¶ 2.] On December 29, 2025,

---

1 Petitioner and Respondent largely agree on the relevant facts contained in the Petition. However, to the extent the Respondents do not contest specific factual allegations contained in the Petitioner, those allegations are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026) (citation omitted).

2 Petitioner's petition states that he was detained for a period of 90 days. [Doc.1 ¶ 25.] Respondents state that Petitioner was detained for a period of 92 days. [Doc. 5 at 2.] Based on the analysis contained herein, this minor factual difference is not material to the dispositive issue.

Petitioner was arrested when he presented himself for a check-in appointment at the Whipple Federal Building in Minnesota. [Id. ¶ 4.] Petitioner states that he was arrested without a warrant, an allegation that the Respondents do not acknowledge in their response. [Id. ¶ 62.]

On February 18, 2026, Petitioner filed this petition for writ of habeas corpus. [Doc. 1.] Petitioner asserts that prior to the appointment, he had not been notified of the revocation of his order of supervision, he was not given an opportunity to contest any revocation, and he was not informed of any change in circumstance that indicates his removal could be executed in the reasonably foreseeable future. [Id. ¶¶ 4–6.]

Respondents respond by stating that that on February 11, 2026, "DHS served Petitioner with a Form I-229 and Notice to Alien of File Custody Review planned to occur on March 29, 2026." [Doc. 5 at 2.] Respondents also assert that "DHS has begun the process of obtaining a travel document for Petition." [Id.] Respondents do not provide any materials to support either assertion. The only documents attached to the Respondents' response was Petitioner's initial Notice to Appear before an immigration judge in 2004. [Doc. 5–1.]

## II.   Discussion

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  District courts have jurisdiction to hear habeas challenges to immigration-related detention.  Zadvydas v. Davis, 533 U.S. 678, 687 (2001); Aditya W. H. v. Trump, Civ. No. 25-1976 (KMM/JFD), 782 F. Supp. 3d 691, 702-03 (D. Minn. May 14, 2025) (collecting cases).  The Court has jurisdiction to hear this petition, which does not challenge the removal order but instead challenges the revocation of Petitioner's supervised release and the lawfulness of his re-detention.  See, e.g., Garrison G. v. Bondi, No. 26-CV-172 (JMB/DJF), 2026 WL 157677, at *2 (D. Minn. Jan. 17, 2026) ("Because Garrison G. does not challenge the removal order but instead challenges the revocation of his supervised release and his continued detention, the Court has jurisdiction to decide the questions raised about the lawfulness of his current re-detention."); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal period detention.").

### B. Detention under 8 U.S.C. § 1231

Petitioner argues that 8 U.S.C. § 1231 does not permit Petitioner's detention. Respondents, on the other hand, argue that Petitioner is likely to be removed in the reasonably foreseeable future at least in part because Respondents have begun the process of obtaining the necessary travel documents. [Doc. 5 at 8.] Section 1231, and its implementing regulations codified at 8 C.F.R. pt. 241, govern the detention of noncitizens who have been ordered removed. Such statutory provisions require the United States to execute removal of the noncitizen within a period of 90 days. 8 U.S.C. § 1231(a)(1)(A). The 90-day timeframe can be extended under certain circumstances, including when some noncitizens are likely to be removed in the reasonably foreseeable future. See 8 C.F.R. § 241.4; Zadvydas, 533 U.S. at 701. Specifically, the Supreme Court in Zadvydas held that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701.

Respondents assert that Petitioner cannot prove that there is "no significant likelihood of removal in the reasonably foreseeable future." [Doc. 5 at 5–6.] Respondents examine commonly-considered factors for petitioners to

5

demonstrate a lack of likelihood of removal and state that "ICE has shown that it is neither unwilling to remove, nor incapable of removing Petitioner" because of its effort to obtain travel documents. [Id. at 6.] This is unconvincing for two reasons.

First, Respondents have provided no evidence to support their assertion that DHS has "begun the process" of obtaining Petitioner a necessary travel document. Respondents submit no affidavit or declaration from a DHS official, no documentation of any request to Laos, no copy of a passport or even a passport application, and no evidence that Laos has agreed—or is even likely—to accept Petitioner. Instead, Respondents rely solely on conclusory statements that efforts to obtain travel documents are "proceeding apace." [Doc. 5 at 8.]

Courts in this District have squarely rejected such threadbare showings. In Yee S. v. Bondi, the court dismissed similar assertions where the government claimed ICE was "in the process of obtaining a travel document," yet failed to submit the referenced declaration or identify a country willing to accept the petitioner. 806 F. Supp. 3d 894, 901 (D. Minn. 2025). As in Yee S., Respondents' unsupported and speculative representations fall far short of demonstrating that

Petitioner's removal is likely any time in the near future, and they certainly do not pass muster to justify the Petitioner's continued detention.

Second, and perhaps more importantly, Respondents spend their entire response making an argument that does not apply to Petitioner's situation. Respondents argue that <u>Zadvydas</u> permits continued detention beyond the 90-day period for those ordered removed. [Doc. 5 at 4–5.] This may be true but "<u>Zadvydas</u> does not apply to noncitizens subject to an order of supervision." <u>Vang v. Bondi</u>, No. 0:26-CV-1381, 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026); <u>see also</u> <u>El Trejo v. Warden of ERO El Paso E. Montana</u>, 25-CV-401, 2025 WL 2992187, at *6–7 (W.D. Tex. Oct. 24, 2025). As the Court in <u>Vang</u> pointed out, the <u>Zadvydas</u> decision focuses on the burden to prove that removal is unlikely; however, when an order of supervision has been issued, "there has <u>already been</u> a determination that a noncitizen is not likely to be removed." <u>Vang</u>, No. 0:26-CV-1381, 2026 WL 458195, at *3. Instead, when, as here, an order of supervision has already been issued, there is an entirely different regulatory process that DHS must follow to revoke an order of supervision. This process is codified at 8 C.F.R. § 241.013.

## C.  Revocation of Supervision Order under 8 C.F.R. § 241.013

The Petitioner correctly points out that by ignoring the order of supervision entirely, the Respondents did not to address "Petitioner's core allegation that the Government followed none of its own procedures under agency regulations to revoke [Petitioner's] Order of Supervision when it re-detained him" in December 2025. [Doc. 6 at 5.] Regardless of the Respondents' failure to address the arguments directly, this Court finds that the record does not support an independent finding that Respondents adequately followed the required steps to revoke Petitioner's order of supervision.

Government agencies are required to follow their own regulations. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954); Sarail A. v. Bondi, No. 25-CV-2144 (ECT/JFD), 2025 WL 2533673, at *2 (D. Minn. Sep. 3, 2025). Specific regulations control the government's ability to detain and to revoke the release of noncitizens who are subject to orders of removal. The relevant regulations state that an order of supervision under § 241.13 can be revoked, and a noncitizen can be re-detained, in two situations: (1) the noncitizen violated any of the conditions of his release, or (2) the government identifies "changed circumstances" that indicate a "significant likelihood that the alien may be

8

removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). Under the latter condition, the burden is on the government to establish changed circumstances that sufficiently justify a noncitizen's re-detention. See Dusan C. v. Bondi, No. 26-CV-00620 (JRT/ECW), 2026 WL 458128, at *4 (D. Minn. Feb. 13, 2026), R&R adopted, 2026 WL 465534 (D. Minn. Feb. 18, 2026) (citations omitted).

Under either situation, the regulations require ICE to notify the noncitizen of "the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). The regulations also require that ICE conduct a an "initial informal interview promptly after his or her return to custody" that gives the noncitizen a chance to respond to the listed reasons for revocation." [Id.]

As stated above, Respondents neither state nor provide any sort of verifiable documentation that these requirements were met. Instead, on February 11, 2026, almost a month and a half after Respondents detained Petitioner, they served Petitioner with a "Form I-229 and a Notice to Alien of File Custody Review" planned to occur over a month later. [Doc. 5 at 2.] There is no way for the Court to verify that these supposed documents provided adequate notice of revocation to Petitioner because the Respondents did not attach them to their response. And even if the documents were sufficient to notify Petitioner of the

revocation, Respondents admits that the documents were issued almost a one-and-a-half months after Respondents detained Petitioner. [Id.] This Court agrees that "that's not how it works" because DHS is responsible for showing a change in circumstance "before revoking an order of supervision and detaining a person indefinitely." See Vang v. Bondi, No. 0:26-CV-1381, 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026).

Respondents' own evidence demonstrates that they did not comply with the requirements of 8 C.F.R. § 241.13(i). Respondents' continued detention of a person without regard for its own regulations is not only disturbing but facially unlawful. Release is the proper relief to remedy unlawful detention.

Because the Court finds Respondents violated 8 C.F.R. § 241.13 in re-detaining Petitioner, it does not reach the Petitioner's alternative grounds for relief. See Faysal N. v. Noem, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026) (stating that when the court's decision on one of the petitioner's asserted theories for relief meant that the petitioner's detention was unlawful, the court did not need to reach the petitioner's alternative arguments).

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** as follows:

   a. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least two (2) hours in advance of Petitioner's counsel;

   b. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest, such as his driver's license, immigration papers, passport, cell phone, and keys; and

   c. Respondents are enjoined from imposing any conditions on Petitioner's release other than the conditions contained within his preexisting Order of Supervision;

2. Respondents are ordered to confirm Petitioner's release from custody as well as the Respondents' compliance with the rest of the Court's Order within forty-eight (48) hours from the date of this Order; and

3. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  February 27, 2026          s/Michael J. Davis
                                   Michael J. Davis
                                   United States District Court